Good morning, Your Honors, and may it please the Court. My name is Eric Larson. I represent Tandem Fund, the plaintiff and the appellant below. This case poses the question of when an insurance company can avoid the contractual language that it drafted itself by invoking public policy concerns. That's a fairly dramatic outcome, and for that reason, the circumstances in which an insurance company can do that are limited. However, the District Court below applied one of those public policies, we think, quite too broadly, and that's why we were up here today. I'll address that first public policy first, which is that you can't get insurance coverage for a restitutionary award. The Supreme Court, California, has spoken very specifically on this issue in two cases. In A.I.U., the Court found that environmental cleanup costs were not restitutionary. They could be covered by insurance, even though the Court acknowledged that it looked a lot like restitution in certain respects. The Court went so far as to say that because compensatory damages and restitution are both within the purposes of insurance policy interpretation, that was dispositive. Now, in Bank of the West, then, the Supreme Court kind of backed off a little bit from that. They said, hey, we didn't mean to say that restitution is always the same as damages, because they found a case where they wanted to bar coverage, and that was Bank of the West, who was charging illegal interest rates from their depositors. But this seems quintessentially restitution. Money is, you know, put in by investors under false pretenses, and the order is to give the money back. That looks like restitution. Whether we slap a damages label on it, it seems to be within the core of this public policy that you can't insure against an order that you disgorge wrongfully gotten sums. The case law is very clear that the purpose of restitution is to restore what the wrongdoer has in their pocket. There were two defendants in the arbitration. One was Cuff, the company. The loan, the loans fund, we're talking about $1.7 million is the nut here. That loan was made to Cuff. It was not made to the individual. You have a case that says that the bar against insurability of restitution awards does not apply to someone, I mean, who is essentially a co-conspirator or a co-defendant. Is there a tracing requirement? You actually have to follow the trail of the dollars, or is it just that we look at, is it a restitutionary award? You're liable for the restitution. You're being ordered to give it back. We can't allow wrongdoers to insure that. And you have to look at how this developed in the Supreme Court. And the Supreme Court, if you read the language in Bank of the West, it's all about restoring, giving back, ill-gotten gains. The individual sued. She never had any ill-gotten gains in this case. She lost her own money in this endeavor. And damages are measured in fraud cases by the out-of-pocket loss of the victim. These are called damages. I'm not saying that the label is determinative. But there was no claim for unjust enrichment. It was purely a tort claim. The restatement on restitution says restitution is not available on tort and contract. It's available in equity. There was no equitable claim. Nobody thought of this as restitution ever, certainly not the arbitrators. And it's only after the fact that Scottsdale comes in and says, oh, hey, we have this public policy. And when Judge Chabria went that direction, I reminded him, well, if you're going to go there, Your Honor, which actually, it shocked me, really. I didn't think, it looks like that's where you're going, too. And that kind of surprises me, because I think the Supreme Court's been very clear on this. But there is a specific written exclusion that says, if you're going to focus on the benefit received by the insured and not the harm caused by the victim, there needs to be a final judgment. So is it your view, then, that that exclusion can narrow the applicability of this public policy so that an insurer can contravene the public policy by putting an additional condition on it and limitation on it? Well, it's not narrowed so much as it is saying, here are the circumstances. So you're saying, yes, because no one moved to confirm the arbitration award, I get to get out of this rule, and I get insurability. That doesn't seem to make a lot of sense. Well, let me address that. Scottsdale controlled this process from the beginning, starting when they wrote the policy. They could have written, and there are policies out there, and we cite in our footnote a case that addresses a policy like this that will say, final judgment or other final adjudication. They didn't write it that way. They wrote it how they wrote it. You need a final judgment. We cited the Northern District case, Scottsdale v. Feynman, where the court enforced that when there was just an arbitration award in front of it. They said, that's not good enough. You need a final judgment. Here's the other part where Scottsdale had control. Scottsdale was a party in the arbitration. They intervened over our objection. They could have confirmed the award. If they had, I wouldn't be sitting here today. And yes, Your Honor, I'll be very honest with you. The client came to me and said, I got this award against a defunct client, another individual without any money. How do I get my money from Scottsdale? And I said, well, if they confirm this award, you're in trouble. So we need to wait and see what happens. And they didn't do it. I don't know why they didn't do it, Your Honors, but they didn't. And they could have very easily done that. So they control this process from the beginning. And I'm not trying to take advantage like it's a bad thing, Your Honor. I represent the victim of the fraud. The only person who... But the victim, you acquired the rights of the wrongdoer under the insurance policy.  So you're saddled with whatever they're saddled with. I am. I am. I'm stuck with it. And it's not the easiest case, because this went all the way up to the line of a final judgment. I mean, I have a reasoned award saying that she committed intentional fraud. So this is a dangerous case, because just switching to the 533 issue for a moment, Scottsdale says in their brief, negligent misrepresentation is barred by 533. And that's just flat wrong. I mean, anybody who reads the definition of a wrongful act in the policy would be shocked by that. And I think any director or any smart or capable, cautious person who's thinking of going into corporate governance would think twice about that, if that's going to be the law. The trouble is there's a lot of district court cases, not a lot, I'd say a few district court cases that give Scottsdale enough ammunition to say that. We look to federal courts in California, much more than state courts in this one area of insurance law, directors and officers coverage. If you go on, if you do address 533, which I hope you do, because I do think this is definitely not restitution, if you do address 533, I think everybody could really benefit by some direction as to what that means, because right now, the cases are really dangerous. If negligent misrepresentation is barred by 533, there's really no meaningful coverage under every directors and officers policy sold in California and every other State I've seen. Well, was it negligent misrepresentation or intentional misrepresentation? It was intentional, Your Honor, but it wasn't willful. And the exclusion specifically says if you, there's no bar to coverage for fraud unless you have a final judgment saying there was fraud. Otherwise, you can imagine a situation where I'm, say I'm in summary judgment or I'm just in discovery and the evidence is coming in and it's coming in bad for me in whatever State I'm in. And the insurance company says, hey, you know what? This is looking pretty bad for you. We're not going to defend you anymore. And I say, wait a minute. It says right here, you have to defend me up until there's a final judgment. And they'll say, no, no, no, 533, see tandem versus Scottsdale, Ninth Circuit. It's, if you give them an inch on this, Your Honor, the insurance companies are going to take a mile and it's going to throw directors and officers coverage into a state of complete deseret. With that, I'd like to reserve my final six minutes. All right. Thank you, counsel. Good morning. May it please the court. This case can be decided in Scottsdale's favor based upon three separate and distinct rules. The first being the rule against restitution. In California, there's a public policy that bars insurers from insuring insureds against claims for restitution, which is exactly what we have here. The money awarded to Tandem Fund was the exact amount that they invested in Cuff. The fact that Sood, Ms. Sood, was also sued is immaterial. What the courts look at is what is the amount being claimed. And that amount that was being claimed and that was finally awarded was the exact amount that was being invested. Do you have a case that says that a co-defendant who didn't receive any funds but is subject to a restitution ward cannot be insured against that liability? No, Your Honor. I don't think it would come in the form of restitution. What I would point the court to would be August Entertainment, and that goes to the issue of whether this constitutes a wrongful act under a DNO policy. In that case, the court went through an extensive explanation as to why there would not be coverage for a breach of contract claim even though it was asserted against an individual in the company because the individual signed in their individual capacity versus in their corporate capacity. And in that situation, the court pointed out that DNO policies, as does Scottsdale's policies, contain a breach of contract exclusion that applies to the company only. There is not such an exclusion for an individual because an individual, if they are liable for a breach of contract, they are liable in their personal capacity. In their personal capacity, they would not be insured. It would not constitute a wrongful act under the policy. So there would be no coverage for that individual anyway. And the court also pointed out it would be irrational to circumvent the rule against insuring corporations for breaching a contract that they agreed to pay by simply pointing to the fact that, oh, there's an individual that is also named. That would allow both claimants as well as insureds to circumvent that public policy, and that cannot be the law. In Oak Park, Calabasas, the court also went extensively into the public policy. And I'm actually on my second argument now, which coincides with His Honor's question. But Oak case, or where the homeowners association entered into a contract to get a contractor to perform some work with no intention of paying for that work. Now, regardless of what the cause of action was called, what the court looked at is what is being asked for here. What is essentially being asked for is the homeowners association is being asked to pay what they owe under the contract. And in turn, what the homeowners association did to the insurer was ask that the insurer pay that amount under contract. That cannot be the law in California. That would be extremely dangerous. That would make an insurance company a corporate partner of every company they provide a D&O insurance to. What that means is that the company could then go out, obtain loans, enter into contracts, not pay, but then look to their insurer to step in and pay those obligations, whether they're debt from loans, whether they're debts from contract. In Bank of the West, the court pointed out that an insured, it did involve a loan, multiple loans, automobile loans. And in that case, the bank received improper interest. And the court said, that's not right. We're not going to step in and allow an insurer to pay for your preexisting obligation. That would then allow companies to simply pass off their obligations to insurance companies without insurance companies assuming that risk during the underwriting process. There is simply no way that an insurance company could underwrite a risk without the ability to know what contracts a company is going to enter into, and then later down the road, ask them to step in and pay for them. That's why the courts in California have consistently held that there are no claims, there can be no coverage for claims for restitution. The court in August Entertainment provided a second reason why this court can confirm dismissal of tandem funds case. And as I mentioned, they addressed whether that cause of action alleged a wrongful act. Same issue here, a preexisting obligation, a company sought the return of royalties, and the court, as I mentioned, explained why that can't be in California. On a third reason, Insurance Code 533, the Tandem Fund has often pointed to the policy's conduct exclusion, which requires a final judgment. There's no inconsistency between Insurance Code 533 and Scottsdale's conduct exclusion, and here's why. Insurance Code 533 addresses indemnity only. There's no bar to an insurance company providing a defense to an insured, even when only willful acts are alleged against that insured. Insurance Code 533 does not bar a defense. Neither does the conduct exclusion. It provides that a defense will be, essentially, provides that a defense will be provided to the insured through final judgment. Doesn't limit it to final judgment after a verdict, or, excuse me, judgment after a verdict, or a judgment after appeal. It's a final judgment. So whenever that final judgment is achieved, the defense obligation ends, and Scottsdale would then be permitted to file a deck relief action or defend itself against its denial for indemnity. That is completely consistent with Insurance Code 533, but what we're dealing with here is not a duty to defend. It's simply a duty to indemnify. As I mentioned... Why didn't Scottsdale confirm the arbitration award? It didn't need to, and confirming the arbitration award would provide a judgment against its insured as well as itself, and quite frankly, Scottsdale was shocked that Tandem Fund did not seek a final judgment so that it could enforce that judgment. So it's not to say that no party could attempt to enforce that. If the restitution, Bank of the West, Jaffe rule, and 533 did not apply, would the lack of the confirmation of the arbitration award, is that required for there to be liability that would result in coverage, or would Scottsdale pay even in the absence of the confirmation of the award? Do you see what I'm getting at? I understand. I don't believe they would pay. They would insist, until there's a final judgment, it's not actually something we have to pay for yet. Correct, and Scottsdale has not paid for its own obligation on the final award because it has not been rendered a final judgment. And what that means is any party who wants to enforce that will now need to move in the state court to have a final judgment. But getting to Your Honor's question, if we didn't have Bank of the West, if we didn't have August Entertainment, and we didn't have Insurance Code 533, Scottsdale may have then moved to confirm the award and sought deck relief on the fact that it did not owe indemnity. But given those three strong public policy reasons, it's not necessary to go those other steps. Scottsdale did reserve rights from the beginning to raise any of the defenses even past the pleading stage, if that turns out to be the case. So I think the court can find for Scottsdale, as I mentioned, under any three of these public policy reasons, there is no case that says, that I would say is directly on point in that we have Mrs. Sood. But what the cases do provide us with is to look to the amount awarded, not the title, not who's involved, and to allow or to accept Tandem Fund's argument that the court can circumvent California's public policy simply because Mrs. Sood is in the case would allow all parties in the future to simply circumvent that same public policy by naming an individual, and that just cannot be the law. And with that, I would submit and thank the court, unless there's any further questions. All right. Thank you, counsel. Mr. Larson. Thank you, Your Honors. Just briefly, first of all, I'm not aware of any authority that says that how you, if the amount is the same that the victim departed with, that it's automatically restitution, which appears what Scottsdale's arguing. I mean, out-of-pocket loss is a measurement of fraud damages. Just the fact that it's the same as the amount of the loan, if that automatically makes it restitution, then this coverage really becomes illusory. And I mentioned before that if you give the insurers an inch on this, they're going to take a mile. And you just saw it today because I am not arguing that this is a breach of contract case. I'm not arguing that breaches of contract are covered. They're not. That's undisputed. This argument was not made below, that this is just a breach of contract case. There was no breach of contract claim in the arbitration. It was intentional fraud. If an insurer is so easily able to recast a tort as contract, again, this coverage disappears and becomes illusory. One quick point on Bank of the West I want to underscore. Bank of the West was very important to the Court that there were no damages available in that claim. It was under Business and Professions Code, Section 17203, only restitution and injunctions were available. That was a major underpinning of the Court's reasoning, same with Jaffe. It was a criminal case with criminal fines. So I urge the Court to look very closely on restitution angle to what the Supreme Court was saying in AIU and Bank of the West because I think they were very clear the money has to be in the defendant's pocket and return. Sue never had the money. She lost her own money. Thank you, Your Honors. Thank you, Counsel. Tandem Fund v. Scottsdale Insurance Company will be submitted.
judges: Gilman, WARDLAW, COLLINS